UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CASE NO.: 1:17-CR-37-HAB |
| ) | |
| WALTER GROSS, JR. ) | |
| ) | |

## OPINION AND ORDER

Walter Gross, Jr.'s ("the Defendant") mother is ailing and he believes she needs a full-time caregiver. The Defendant wishes to be that caregiver, and to that end, he filed his second Motion for Compassionate Release/Reduction in Sentence Pursuant to § 3582(c)(1)(A) (ECF No. 86). Because the Defendant has again not met his burden of demonstrating an extraordinary and compelling reason for his release, his second motion will be DENIED.

## BACKGROUND

On February 3, 2017, the Fort Wayne Police Department (FWPD) received a tip from the National Center for Missing and Exploited Children which indicated that over 500 files of child pornography had been uploaded to a file sharing program from a particular IP address. (Presentence Investigation Report "PSR", ECF No. 51, at ¶12). FWPD tracked the IP address to the Defendant at a home in Fort Wayne, Indiana. Officers obtained and served a search warrant at the Defendant's home where they recovered certain computer hardware containing 539 files. (*Id.* at ¶13). The Defendant admitted that the hardware and devices recovered were his and advised that they contained child pornography. The Defendant then advised investigators how he obtained child pornography on the internet. An FBI agent assigned to the case reviewed the images on the Defendant's computer devices and determined that they depicted minors engaged in sexually explicit conduct. Specifically, one video depicted an adult placing an index finger inside a naked

7-10 year-old female's vagina. (*Id.* at 18). Another video showed an approximately 7-11 year old female's mouth open and white colored substance on her tongue and right cheek area. A male's penis was positioned directly in front of the child's mouth.

On June 28, 2017, the Defendant was indicted for knowingly utilizing interstate commerce to receive visual depictions involving minors engaging in sexually explicit conduct (Count 1 – 18 U.S.C. § 2252(a)(2)) and for possession of material involving the sexual exploitation of minors (Count 2 –18 U.S.C. § 2252(a)(4)(B)).[1] He pled guilty to count 2 and was sentenced to 120 months imprisonment with five years of supervised release to follow. The Defendant is presently incarcerated at FCI Fort Dix in Trenton, New Jersey with an anticipated release date of March 7, 2027.

## DISCUSSION

The federal compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), creates an exception to the general rule that a federal district court may not modify a term of imprisonment after it has been imposed. Courts may consider compassionate release upon a motion by the Bureau of Prisons, or by a defendant who has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The Government concedes that Gross exhausted his administrative remedies and thus, the Court moves on to the substantive analysis.

"Once a defendant satisfies the exhaustion requirement, a court uses a two-step analysis in determining whether compassionate release is warranted." *United States v. Peoples*, 41 F.4th 837, 40 (7th Cir. 2022). At step one the defendant must identify an "extraordinary and compelling"

---

[1] This was not Defendant's first rodeo with possession of child pornography. He had a previous conviction in state court from 2004 for this conduct.

2

reason warranting a sentence reduction. *United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021). If a court finds such reasons exist, it moves to the second step to weigh the relevant sentencing factors under 18 U.S.C. § 3553(a). *Peoples*, 41 F.4th at 840; *see also United States v. Sarno*, 37 F.4th 1249, 1253 (7th Cir. 2022).

The Seventh Circuit has held that district courts have broad discretion in determining what constitutes "extraordinary and compelling reasons" under the statute. *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020). The district court must "consider[ ] the applicant's individualized arguments and evidence," *United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022), but ultimately "[t]he movant bears the burden of establishing 'extraordinary and compelling reasons' that warrant a sentence reduction." *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021). On this point, the United States Sentencing Commission recently amended the Guidelines Manual to identify several new circumstances as "extraordinary and compelling" reasons potentially warranting compassionate release. *See* U.S.S.G. § 1B1.13 (Nov. 2023). One of these new circumstances, relevant to Gross' motion, provides that "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent" may constitute an extraordinary and compelling reason to justify compassionate release.

In his initial motion, Gross states that his mother, Caroline, is 83 years old and suffers from a multitude of health conditions, including diabetes and high blood pressure. He represents that she is frail, has memory issues, and "is in desperate need of a full-time caregiver." (ECF No. 86 at 1). Gross includes in his filing a letter from Caroline in which she writes:

> I am Walter Gross mother. He is my only child. I live alone…I am a widow. I have to cook and clean for myself. I don't have any help if my son were here he could take care of me. he could cook and clean for me. he could take me to my doctor appointments. he could take me to my meetings and he could go with me to my meetings. I have lived alone for 4 years. I get very lonely. My health is getting worse…

3

[all sic] (ECF No. 86-1).

In his reply brief, Gross provides a list of family members and an explanation as to why he believes they are unable to care for his mother. (ECF No. 90 at 4). He also includes a second letter from Caroline in which she repeats her above sentiments and reiterates that she needs assistance. (*Id.* at 5). Since his initial filings, Gross has provided the Court several updates. (ECF Nos. 91, 92). In those filings, Gross reports that his mother's condition is deteriorating and that members of the Maumee River Congregation of Jehovah's Witnesses, where his mother is a congregant, are participating in her care by providing emotional and spiritual support and coordinating food donations. He states that his mother is being cared for (at least in some capacity) by Tom Stricker and Ryan Melching and that the belief of those individuals is that his mother's need for additional care is imminent and she will need to move to an assisted living facility.

The Court assumes two premises underlying Gross' compassionate release motion that: (1) his mother is incapacitated; and (2) other family members are ill-equipped or unable to serve as her caregiver whereas Gross, if released, would be. The Court rejects both these premises.

Incapacity first. "Incapacitation" within the meaning of § 1B1.13(b)(3) typically means that the individual is "completely disabled" and "cannot carry on any self-care" or "is totally confined to a bed or chair." *See United States v. Steele*, 2024 WL 1928945, at *3 (S.D. Ohio May 1, 2024) (quoting *United States v. Jones*, 2021 WL 1060218, at *10 (W.D. Pa. Mar. 18, 2021)). Proving incapacity is a high bar. And here, Gross has not met that bar. The Court has no records of health care professionals[2] or any independent medical determinations to demonstrate that

---

[2] In *United States v. Haldorson*, 2024 WL 621653, at *2 (N.D. Ill. Feb. 14, 2024), the defendant submitted evidence from his father's health care providers to establish that his father was incapacitated. That evidence established that the defendant's father required round-the-clock assistance and supervision as well as total assistance for mobility, bathing, dressing, administering medications, preparation of food, eating and drinking, toileting, and personal hygiene. With this evidence, the court had no trouble concluding that the

Caroline is incapacitated in the ways contemplated above. Instead, Gross' filings demonstrate that Caroline is living independently, is not homebound or completely disabled. She has individuals that watch over her and assist her with some of her daily tasks. The Court understands that both her and Gross prefer that Gross be released from custody to be able to assist her, but that preference does not qualify Caroline as incapacitated.

That is not to say that the Court isn't sympathetic to Caroline's circumstances. Caroline's letters highlight the realities family members of incarcerated individuals face. She appeals to the court to release Gross to assist her with appointments, household tasks, and to take her to meetings. She is aging, lonely, and understandably wants the companionship of her only son. "Incarcerated people commonly leave innocent partners, parents, and children to fend for themselves as a result of criminal conduct." *United States v. Williams*, 2020 WL 3502819, at *3 (S.D. Ohio June 29, 2020). But general claims from Defendant's mother that it would be helpful for her son to take care of her and cook and clean for her do not suffice to demonstrate incapacity. *See United States v. Wendel*, 2024 WL 2748493, at *2 (N.D. Ohio May 29, 2024) ("Ms. Wendel's general assertion she is unable to 'manage her home' is not sufficient to demonstrate that she is incapacitated."). Gross has simply not met his burden of showing incapacity, by medical documentation or otherwise.

But even if the Court set aside the absence of any medical opinions reflecting his mother's incapacitation and opted to credit her letters as evidence of incapacity, Gross has not demonstrated that he is the only available caregiver for her. Critical to § 1B1.13(b)(3)(C) is the requirement that the defendant be the sole available caregiver for his incapacitated parent. *See United States v.*

---

defendant's father met the "incapacitation of the defendant's parent" element of U.S.S.G. § 1B1.13(b)(3)(C).

*Davis*, 2024 WL 3924586, at *3 (S.D. Ind. Aug. 23, 2024); *United States v. Lisi*, 440 F. Supp. 3d 246, 252 (S.D.N.Y. 2020) ("The animating principle of [U.S.S.G. § 1B1.13(b)(3)] is that there exists an extraordinary and compelling reason for release when the defendant has a close family member who is completely unable to care for himself or herself and for whom the defendant would be the only available caregiver."). "[C]ourts generally require a showing of evidence from several sources indicating that the defendant is the only available caregiver for a family member in dire conditions before concluding that an extraordinary and compelling reason has been established." *United States v. Lindsey,* 2021 WL 37688, at *3 (S.D.N.Y. Jan. 4, 2021). Gross attempts to establish that he is the only available caregiver by providing the Court with a list of individuals that he believes cannot care for Caroline or whose own life circumstances would make providing care burdensome. But that is not enough. Unwilling individuals are not unavailable; and the fact that it would be difficult for other family members does not equate to unavailability. But setting that aside, in his latest filings, Gross identifies individuals who have been providing assistance to his mother with daily tasks while he has been incarcerated. And, to the extent Caroline must enter an assisted living facility, she will have access to caregivers who can provide for her. So, in a nutshell, she has caregivers now and will be taken care of in the future. The Court then, cannot conclude that Gross is the only available caregiver. Gross has not met his burden to show that any need to be home to care for his mother is an extraordinary and compelling reason for release.

But, even if the Court were to assume that Gross had established an extraordinary and compelling reason, the Court, as it did in Gross' first request for compassionate release, would nevertheless find that Gross is not entitled to compassionate release because the sentencing factors under 18 U.S.C. § 3553 do not weigh in his favor. The Defendant was sentenced to 120 months for his offense. This sentence was imposed to reflect the seriousness of the offense, promote

6

respect for the law as well as to afford adequate deterrence and to protect the public from further crimes of the defendant. To re-emphasize what this Court previously told Gross:

> The Defendant's offense involved over 500 images of child pornography and as the Government emphasizes, this was not the Defendant's first child pornography conviction. Prior to the instant offense, he was convicted of two state counts of felony possession of child pornography. The PSR described the facts underlying those convictions in this way:
>
>> The files contained images of pre-teen girls performing sexual acts on each other, pre-teen girls performing oral sex on a male, and photos of undeveloped girls. A forensic analysis returned over 70,000 images on the defendant's computer, and many of the images were of child pornography. There were seven video clips of girls who appeared to be between the ages of eleven and sixteen having oral, anal and vaginal intercourse with adult male subjects; nine video clips of pre-adolescent girls at nudist camps; and one video of two female teens being penetrated by someone's hand.
>
> (PSR, ¶37). To say that the nature of the Defendant's actions in not only the present case but also in his first case are "serious," would grossly understate the depravity of the offenses. Rather, the Defendant here is the poster child for the Sixth Circuit's recent commentary that, "[c]hild pornography is an abhorrent offense that scars the children affected forever. And it doesn't take an economist to know that demand drives supply." *United States v. Schrank*, 975 F.3d 534, 536 (6th Cir. 2020). Indeed, "[b]y repeatedly downloading images of young children being raped," the Defendant here contributed to their past victimization, fueled the demand for child pornography and contributed to the future harm all these children face. *Id*. Given these circumstances, and the notion that "general deterrence is crucial in the child pornography context," *see United States v. Bistline*, 720 F.3d 631 (6th Cir. 2013), the Court cannot conclude that the Defendant does not pose a significant threat to the community as no prior intervention by authorities has curbed his penchant for viewing and downloading child pornography. The Court finds that the significant sentence reduction that Defendant seeks would greatly undermine the above statutory purposes of sentencing.

(ECF No. 84 at 11-12).

Nothing about the passage of time and the nature and circumstances of the Defendant's crime alter the above observations nor does anything that the Defendant submits now warrant reconsideration of the §3553(a) factors. As this Court wrote, Gross caused significant harm to the victims depicted in the child pornography and, given the nature of his offense and the need for

general deterrence, compassionate release would undermine the goals of the original sentence. Defendant's Request for Compassionate Release is DENIED.

## CONCLUSION

For the reasons stated, Gross' request for compassionate release (ECF No. 86) is DENIED.

So ORDERED on September 5, 2024.

                                              s/ *Holly A. Brady*
                                              CHIEF JUDGE HOLLY A. BRADY
                                              UNITED STATES DISTRICT COURT